WIGGINTON, Judge
(dissenting).
I am unable to agree with the conclusion reached by the majority opinion which holds that the trial court erred in finding appellant, General Finance Corporation, guilty of converting six of the eight motor vehicles involved in this case, and in rendering judgment against General Finance in favor of East Lake Auto Sales Company, Inc., for the value of the vehicles.
The bills of sale executed by East Lake Auto Sales Company to each of the vehicles sold by it to Young Motors Inc., contained two important and noteworthy provisions. One was to the effect that title to the vehicles would remain in the seller until all checks given in payment thereof had cleared the bank and clearinghouse. The next provision was to the effect that at the time the bill of sale was issued, a check for the purchase price was due from the buyer, Young, to the seller, East Lake. These bills of sale -were physically delivered to General Finance Corporation at the time it entered into a financing agreement with Young whereby money was advanced on the strength of'a trust receipt. Repayment of the loan was secured by a pledge of the vehicles under the Uniform Trust Receipts Law.[1] This arrangement was entered into, and funds were advanced by General Finance, immediately after the bills of sale were delivered to Young and the vehicles transferred to its place of business in Pensacola. It therefore appears without question that when General Finance advanced funds to Young under their trust receipt agreement, the former either knew, or was on actual notice, that the vehicles described in the bills of sale delivered to it had not been paid for by Young, and'that Young would not become vested with title until the funds advanced by General Finance had been paid over to East Lake on the purchase price of the vehicles. This was the procedure followed by the parties in the prior course of business dealings between them. General Finance trusted Young to apply the loan proceeds in payment of the purchase price of the vehicles, so the consequences flowing from Young’s betrayal of the trust reposed in it by General Finance should fall on the latter, and not on East Lake.
Within ten days after purchasing the vehicles and entering into the floor plan arrangement with General Finance, Young advised the manager of General that his company did not have sufficient funds to cover $26,000.00 worth of checks theretofore delivered by Young to General on separate and unrelated transactions. It was then that Young told General’s managing agent, a fact admitted by him, that Young owed East Lake for the purchase price of the six vehicles which Young had purchased from East Lake and which had been pledged as security under the trust receipt and floor *405 plan arrangement entered into between Young and General Finance. Thus, it affirmatively appears without question that at the time Young thereafter purported to convey by bill of sale to General Finance the vehicles in question, the latter knew that Young had not paid for them and owed East Lake for the purchase price thereof. Under these circumstances General Finance is in no position to claim that it was a bona fide purchaser of the vehicles for value, and without notice of East Lake’s proprietary interest therein. General’s subsequent actions during the ensuing two or three days in pursuance of an attempt to secure title, secrete and dispose of the vehicles, strongly indicate a realization on its part of the vulnerability of its position.
Although General’s loan to Young under the floor plan arrangement between them was made in apparent good faith, and in accordance with a prior course of business dealings between them, the fact remains that the only security demanded or received by General was a trust receipt issued pursuant to the provisions of the Uniform Trust Receipts Law, F.S. Chapter 673, F.S.A. After Young became financially insolvent, General did not seek recourse under the provisions of the law on which it acted in making its loan, but sought to protect itself by taking from its debtor bills of sale to pledged vehicles which it knew to be either owned or encumbered by another. Its position must therefore be judged in accordance with the law of sales, and not upon equitable principles.
From the foregoing facts it is my view that the evidence was sufficient to support the finding of the trial judge, sitting as a trier of the facts, that General Finance had unlawfully converted the vehicles in question, and deprived East Lake of its ownership therein. The judgment against General Finance and Young Motors should be affirmed.
I concur with the majority opinion with respect to appellants Bratcher and Starke. They each purchased one of the vehicles in question from Young Motors from its sales office in Pensacola. They had no prior knowledge of any indebtedness owed by Young to East Lake, nor that check for the purchase price of the vehicles had not been paid and satisfied. They fall clearly within the category of good faith purchasers for value without notice of East Lake’s interest in the vehicles, and their title should be protected as against the claims of East Lake. I would affirm the judgment with respect to General Finance and Young Motors, but would reverse as to Bratcher and Starke.